96.    EPA took additional groundwater samples on property adjacent to Cow Palace Dairy, both upgradient and downgradient in December 2012.

97.    Upon information and belief, Plaintiffs assert that Cow Palace Dairy refused entry to EPA to conduct sampling on the Dairy's property during the fall of 2012 and winter of 2012-13.

98.    On or about March 31, 2010, EPA sent Cow Palace Dairy a letter requesting access to the facility to collect soil and other environmental samples on the Dairy's property.  The letter also requested Cow Palace Dairy to respond to a questionnaire about the Dairy's practices and management.  Upon information and belief, Cow Palace Dairy again refused access to EPA and did not respond to the questionnaire.

### EPCRA & CERCLA Reporting Violations

99.    Upon information and belief, Plaintiffs assert that Cow Palace Dairy has released and continues to release more than one hundred (100) pounds per day of ammonia into the environment and has failed to provide adequate legal notice of reportable releases to the National Response Center in violation of CERCLA, 42 U.S.C. § 9603(a).  Any reports submitted by Defendant fail to meet the notice requirements established by law.

100.    Defendant's operations release reportable quantities of ammonia under CERCLA.  Consequently, under EPCRA and its implementing regulations,

1    Defendant is required to provide notice of reportable releases to the appropriate

2    federal, state and local emergency response officials.

3    101.   Plaintiff is informed and believes that Defendant has released and continues

4    to release more than one hundred (100) pounds per day of ammonia, the threshold

5    release reporting requirement for this substance, into the environment and has

6    failed to provide adequate and proper notice, including follow up written notice, to

7    the appropriate entities including but not limited to the emergency coordinator for

8    the local and State emergency planning committees.

9    102.   The Washington State Dairy Federation, an industry trade group, has

10   provided a Calculation Worksheet to all Washington dairies to be used in

11   evaluating whether dairies need to report their emissions of ammonia to emergency

12   responders under EPCRA and/or CERCLA.

13   103.   According to a January 19, 2011 inspection report of Cow Palace Dairy,

14   created and subsequently redacted by the Washington Department of Agriculture,

15   the Dairy has over 6840 milking cows and between 700-1699 dry cows, 300-999

16   heifers, and 2000-2999 calves housed at the facility.  In total, Cow Palace Dairy

17   had a herd size of at least 9,840 animals since January, 2011.  Based on the

18   Calculation Worksheet provided by the Washington State Dairy Federation, using

19   9,840 animals as a "lower bound," Cow Palace Dairy is releasing at least 1574.4

20   pounds of ammonia per day, well in excess of the 100lb/day reporting limit.  Using

the "upper bound," the Dairy is releasing at least 4732.2 pounds of ammonia per day, or 47 times more the minimum reporting threshold.

## **CLAIMS FOR RELIEF**

### **COUNT I**
### **RCRA Imminent and Substantial Endangerment**

104.    Plaintiffs incorporate by reference the allegations of the preceding paragraphs of this Complaint.

105.    Since at least February 1, 2008, Cow Palace Dairy has been discarding manure, and pharmaceutical by-products in the manure, which are "solid wastes" under section 1004 of RCRA, 42 U.S.C. § 6903(27), because the manure is, either when over applied or leaked through holding areas, a discarded solid, liquid, and/or semisolid material resulting from an agricultural operation.

106.    Cow Palace Dairy is the past and present owners or operators of a storage or disposal facility.  As indicated above, manure is stored and disposed of in massive earthen pits and other holding structures.  As a result, Defendant contributes to the past or present handling, storage, and disposal of a solid waste.  RCRA, 42 U.S.C. § 6972(a)(1)(B).

107.    Cow Palace Dairy is past and present generators of manure and other by-product wastes.  Manure is "handled" and "transported" by the Defendant, as well as disposed of on land owned or leased by the Defendant.  *Id*.

108.   Defendant's handling, transportation, storage, and disposal of manure may present an imminent and substantial endangerment to public health and/or the environment.

109.   Specifically, as alleged above, ground and surface water contamination levels on the Defendant's land, and down-gradient and downstream from Defendant's land and facilities, have contamination levels that exceed the maximum safe consumption limits established under state and federal law, establishing a case of imminent and substantial endangerment to public health and/or the environment.

110.   The National Primary Drinking Water Standards ("NPDWS") are established under the Safe Drinking Water Act ("SDWA"), 42 U.S.C. § 300f, *et seq*. The NPDWS are health-based standards that specify contaminants known to have an adverse effect on the health of persons at levels beyond the parameters set forth in the regulations. 42 U.S.C. § 300f(1)(B).

111.   The Washington Water Quality standards were promulgated to protect ground-water and human health pursuant to the Washington Water Pollution Control Act, RCW 90.48.

112.   Promulgated pursuant to this statute, WAC 173-200-040(2)(a) provides: Groundwater concentrations shall not exceed the criteria listed in Table

COMPLAINT                                                                                      28

1, except as described in WAC 173-200-050 (3)(b).  The ground-water protection

standard for nitrate is the same as the federal MCL of 10 mg/l.

113.   40 C.F.R. § 257.3-4(a) prohibits a facility or practice from contaminating an

underground drinking water source.  "Contamination" occurs when a facility or

practice introduces a toxic substance that causes the concentration of that substance

in ground-water to exceed certain parameters listed in Appendix I to 40 C.F.R. §

257.3-4(a).

114.   The past and continuing practices of the Cow Palace Dairy have

contaminated and continue to contaminate ground-water and surface water to

levels that exceed the maximum limits for safety established under state and

federal law.  These practices present an imminent and substantial endangerment to

the environment and/or public health.  Specifically, Cow Palace Dairy is polluting

groundwater to the extent that it is hazardous to health and the environment and the

shallow contaminated groundwater is discharging to nearby surface waters

including, but not limited to, Roza-Sunnyside Board of Joint Control Drains 26.6,

27.2 and 28.0 and the Sunnyside Canal.

115.   Pursuant to Section 7003, Cow Palace Dairy may be subject to an injunction

under RCRA ordering it to cease and abate any past or present handling, storage,

treatment, and/or transportation of any solid waste or hazardous waste that may

1  present an imminent and substantial endangerment to public health and/or the

2  environment.

3  116.   Plaintiffs' interests are harmed and will continue to be harmed by this

4  imminent and substantial endangerment and by Defendant's failure to abate the

5  endangerment unless the Court grants the relief sought herein.

6  **COUNT II**
**RCRA Illegal Open Dumping**

7  117.   Plaintiffs incorporate by reference the allegations of the preceding

8  paragraphs of this Complaint.

9  118.   Cow Palace Dairy constitutes an "open dump" under RCRA Section

10  1004(14).   42 U.S.C. § 6903(14).

11  119.   Cow Palace Dairy's solid waste disposal practices cause groundwater

12  concentration levels of nitrates and other pollutants to exceed the limits set forth in

13  Appendix I to 40 C.F.R. Part 257, which constitutes illegal open dumping, and is

14  considered to pose a reasonable probability of causing adverse effects to health and

15  the environment.

16  120.   Defendant stores and disposes of manure at the facilities.   The manure

17  constitutes an agricultural waste and a "solid waste" under section 1004 of RCRA

18  because it is over applied and/or improperly stored.   42 U.S.C. § 6903(27).

19

20

COMPLAINT                                                                              30

121.    Groundwater monitoring data indicate that the disposal of solid wastes at the

Cow Palace Dairy, including the fields Cow Palace Dairy uses to apply manure,

are causing the contamination of ground-water to exceed the limits set forth in

Appendix I to 40 C.F.R. Part 257.  Concentrations of nitrate, identified herein,

have repeatedly exceeded the maximum contaminant levels, as documented by the

EPA study.  This practice constitutes illegal open dumping.

122.    Solid waste disposal practices prohibit the contamination of any surface

water source in violation of NPDES requirements or water quality standards.  40

C.F.R. § 257.3-3(a).  Cow Palace Dairy is operating without a NPDES permit.

123.    Pursuant to Section 3008, 42 U.S.C. § 6928, Cow Palace Dairy may be

subject to an injunction under RCRA ordering them to cease open dumping and

remediate the environmental contamination they have caused and/or contributed to,

including widespread soil and groundwater contamination.  *Id*.

124.    Plaintiffs' interests are harmed and will continue to be harmed by

Defendant's open dumping unless the Court grants the relief sought herein.

### COUNT III
### Violations of CERCLA

125.    Plaintiffs incorporate by reference the allegations of the preceding

paragraphs of this Complaint.

COMPLAINT                                                                                          31

126.   Section 103(a) of CERCLA, 42 U.S.C. § 9603(a), and its implementing regulations, 40 C.F.R. § 302.6(a), provide that any person in charge of an onshore facility shall, as soon as he has knowledge of any release of a hazardous substance from such facility in a quantity equal to or exceeding the reportable quantity determined by EPA in any 24-hour period, immediately notify the National Response Center of such release.

127.   Defendant is the "person[s] in charge" of the facility under section 103 of CERCLA, 42 U.S.C. § 9603.

128.   Cow Palace Dairy is an onshore facility within the meaning of section 101(18) of CERCLA, 42 U.S.C. § 9601(18).

129.   Defendant knew or should have known about their ammonia releases above reportable quantities from its facility for at least the past five years.  40 C.F.R. § 302.4.

130.   Under CERCLA and its implementing regulations, Cow Palace Dairy is required to provide notice of reportable releases to the National Response Center.

131.   For at least the past five years, Cow Palace Dairy has released reportable quantities of ammonia, but has not submitted daily release reports to the National Response Center, in violation of CERCLA.

132.   By releasing hazardous substances, including at least ammonia, and failing to file proper and timely reports of such releases to the National Response Center

COMPLAINT                                                                                      32

1  as detailed herein, Cow Palace Dairy committed ongoing violations of CERCLA,

2  42 U.S.C. § 9603(a).

3  133.   Defendant's violations of section 103 of CERCLA are continuing.

4  134.   Defendant's violations of the reporting requirements of CERCLA have been

5  numerous and repeated.  Because of this extensive history of reporting violations,

6  Plaintiff believes and alleges that, without the imposition of appropriate civil

7  penalties and issuance of an injunction, Defendant will continue to violate

8  CERCLA's reporting requirements in section 103.

9  135.   Pursuant to Sections 109 and 310 of CERCLA, 42 U.S.C. §§ 9609(c) and

10  9659, Cow Palace Dairy is liable for civil penalties of up to $37,500 per day of

11  violation for their reporting violations.

12  136.   Cow Palace Dairy may be subject to an injunction ordering it to cease its

13  violations of CERCLA's reporting requirements in section 103.

14  137.   Plaintiffs' members have been unable to determine the quantities of

15  ammonia to which they may have been exposed.  Plaintiffs' interests are harmed

16  and will continue to be harmed by Cow Palace Dairy's refusal to submit timely and

17  required CERCLA reports unless the Court grants the relief sought herein.

18  / / /

19  / / /

20  / / /

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

## COUNT IV
## <u>Violations of EPCRA</u>

138.    Plaintiffs incorporate by reference the allegations of the preceding

paragraphs of this Complaint.

139.    Section 304(a)(1) of EPCRA, 42 U.S.C. § 11004(a)(1), provides that if a

release of an extremely hazardous substance listed under section 302(a) of

EPCRA, 42 U.S.C. § 11002(a), occurs from a facility at which a hazardous

substance is produced, used or stored, and such release requires a notification

under section 103(a) of CERCLA, 42 U.S.C. § 9603(a), the owner or operator of

the facility shall immediately provide notice as described in section 304(b) of

EPCRA, 42 U.S.C. § 11004(b).

140.    For at least the past five years, Cow Palace Dairy released reportable

quantities of ammonia under CERCLA and the applicable regulations, 40 C.F.R.

Part 355, App. A, but has not submitted required release reports or written

emergency follow-up reports to the Local Emergency Planning Committee or

Washington State Emergency Response Commission, in violation of EPCRA.

141.    Cow Palace Dairy is a facility within the meaning of Section 329(4) of

EPCRA, 42 U.S.C. § 11049(4).

142.    Cow Palace Dairy knew or should have known of ammonia releases above

reportable quantities from its facility for at least the past five years.

COMPLAINT                                                                                           34

143.   Consequently, under EPCRA and its implementing regulations, Cow Palace Dairy is required to provide timely notice of reportable releases to the appropriate State and local emergency response officials.

144.   By releasing hazardous substances, including at least ammonia, and failing to timely report such releases to local and State emergency planning committees as detailed herein, Cow Palace Dairy has committed ongoing violations of EPCRA, 42 U.S.C. § 11004.

145.   Defendant's violations of section 304 of EPCRA are continuing.

146.   Defendant's violations of the reporting requirements of EPCRA have been numerous and repeated.  Because of this extensive history of reporting violations, plaintiff believes and alleges that, without the imposition of appropriate civil penalties and issuance of an injunction, Defendant will continue to violate EPCRA's reporting requirements in section 304.

147.   Cow Palace Dairy may be subject to an injunction ordering it to cease its violations of EPCRA's reporting requirements in section 304.

148.   Pursuant to Sections 325 and 326 of EPCRA 42 U.S.C. §§ 11045(b) and 11046(a), Cow Palace Dairy is liable for civil penalties of up to $37,500 per day of violation for its reporting violations of EPCRA.

149.   Plaintiffs' members have been unable to determine the quantities of ammonia to which they may have been exposed.  Plaintiffs' interests are harmed

1    and will continue to be harmed by Cow Palace Dairy's refusal to submit timely and

2    required EPCRA reports unless the Court grants the relief sought herein.

3    ## RELIEF REQUESTED

4    WHEREFORE, Plaintiffs CARE and CFS respectfully request that the Court enter

5    a judgment:

6    A.    Declaring that Defendant's past and/or present generation, handling, storage,

7    treatment, transportation, and/or disposal of solid waste presents, or may present,

8    an imminent and substantial endangerment to public health or to the environment.

9    B.    Declaring that Defendant's storage and disposal of manure and its

10   incorporated by-products constitutes illegal open dumping.

11   C.    Declaring that Defendant has violated and is in violation of the reporting and

12   notification requirements as alleged under CERCLA in Count Three and as alleged

13   under EPCRA in Count Four.

14   D.    Issuing a compliance order that requires Defendant to cease and desist from

15   storing manure on any portion of Defendant's land that the Defendant has not first

16   lined adequately to prevent seepage of pollutants into surface water or groundwater

17   that may, whether by flow or diffusion, transmit such pollutants outside

18   Defendant's property boundaries.

19   E.    Issuing a compliance order that requires Defendant to capture, adequately

20   treat, and sequester as necessary all surface water or groundwater on or within its

1  land, except surface water that flows as the direct result of snowmelt or a

2  precipitation event, so that discharge of such water do not cause or contribute to

3  violation of any applicable water quality standards in any water resource that

4  receives such discharge.

5  F.      Issuing temporary and/or permanent injunctive relief against Defendant,

6  ordering Defendant to cease all activities constituting the imminent and substantial

7  endangerment to the public health and environment, and to cease all activities

8  constituting illegal open dumping.

9  G.      Issuing temporary and/or permanent injunctive relief against Defendant,

10  ordering Defendant to design and implement a program which evaluates the actual

11  amount of manure necessary to provide a specific crop with its anticipated nutrient

12  needs.

13  H.      Issuing temporary and/or permanent injunctive relief against Defendant,

14  ordering Defendant to design and implement a regular soil sampling protocol, such

15  protocol to require sampling at one-foot intervals down to at least a four-foot

16  depth.

17  I.      Issuing temporary and/or permanent injunctive relief against Defendant,

18  ordering Defendant to design and implement a groundwater monitoring program

19  designed to detect the transport of dairy manure nutrients into groundwater.

20

1    J.    Ordering Defendant to take all such actions as may be necessary to eliminate

2    any present and future endangerment and open dumping practices, including but

3    not limited to:

4         (a) funding an independent, comprehensive, scientific study to determine the

5              precise nature and extent of the endangerment and harm caused by open

6              dumping, including a detailed examination of the fate and transport of solid

7              waste from the facility to the waters and soils of the surrounding area, and

8              from the water and soils into biological receptors;

9         (b) funding an independent, comprehensive, scientific study, based on the

10             results of the study described in subparagraph (a) above, of appropriate,

11             effective, environmentally-sound means to eliminate the endangerment and

12             harm caused by open dumping;

13        (c) developing and implementing an appropriate and effective remediation

14             plan, based on the studies described in subparagraphs (a) and (b) above; and

15        (d) developing and implementing manure disposal and storage techniques in

16             accordance to the scientific studies described in subparagraphs (a) and (b)

17             above.

18   K.    Ordering Defendant to operate its facility in accordance with the reporting

19   and notification requirements of CERCLA and EPCRA.

20   L.    Ordering Defendant to pay any appropriate civil penalties of up to $37,500

COMPLAINT                                                                              38

1  per day that CERCLA and EPCRA violations have continued.

2  M.      Ordering Defendant to pay Plaintiffs' reasonable attorneys' fees, expert

3  witness fees, and costs incurred in prosecuting this action pursuant to 42 U.S.C. §

4  6972(e), 42 U.S.C. § 9659(f), 42 U.S.C. § 11046(f) and 28 U.S.C. § 2412(d); and

5  N.      Ordering such other relief as the Court may deem just and proper, including

6  pursuant to 42 U.S.C. § 6972(a)(1), 42 USC § 9659(c), and 42 U.S.C. § 11046(c).

7  Dated: February 14, 2013

8          Respectfully Submitted,

9  s/ Brad J. Moore                          s/ Charles M. Tebbutt
   BRAD J. MOORE, WSBA #21802                 CHARLES M. TEBBUTT
10 Stritmatter Kessler Whelan Coluccio        Oregon State Bar No. 965790
   200 Second Ave. W.                         (*pending admission to Washington State*
11 Seattle, WA  98119                         *Bar*)
   Tel. 206.448.1777                          DANIEL C. SNYDER
12 E-mail: Brad@stritmatter.com               Oregon State Bar No. 105127
                                              (*pro hac vice application pending*)
13 *Counsel for Plaintiffs*                   Law Offices of Charles M. Tebbutt, P.C.
                                              941 Lawrence St.
14                                            Eugene, OR 97401
                                              Tel. 541.344.3505
15                                            E-mails: charlie.tebbuttlaw@gmail.com
                                              dan.tebbuttlaw@gmail.com
16
                                              *Counsel for Plaintiffs*
17

18

19

20

COMPLAINT                                                                    39

s/ Jessica L. Culpepper
JESSICA L. CULPEPPER
New York Bar Member
*(pro hac vice application pending)*
Public Justice
1825 K Street NW, Ste. 200
Washington, DC 20006
Tel. 202.797.8600
E-mail: jculpepper@publicjustice.net

*Counsel for Plaintiffs*

s/ Elisabeth A. Holmes
ELISABETH A. HOLMES
Oregon State Bar No. 120254
*(pro hac vice application pending)*
PAIGE M. TOMASELLI
California State Bar No. 237737
*(pro hac vice application pending)*
Center for Food Safety, 2nd Floor
303 Sacramento Street
San Francisco, CA 94111
Tel. 415.826.2770
Emails:
eholmes@centerforfoodsafety.org
ptomaselli@centerforfoodsafety.org

*Counsel for Plaintiff Center for Food Safety*

COMPLAINT

40

# Law Offices of Charles M. Tebbutt, P.C.
### 941 Lawrence Street
### Eugene, OR 97401
### Ph: 541-344-3505 Fax: 541-344-3516

October 17, 2012

*Via Registered Mail*

Owner or Site Manager
Cow Palace Dairy
1631 N. Liberty Road
Granger, WA 98938

Cow Palace, LLC
Registered Agent: R. William Dolsen
301 N. 3rd St.
Yakima, WA 98901

RE:    **NOTICE OF INTENT TO SUE PURSUANT TO RESOURCE
CONSERVATION AND RECOVERY ACT, 42 U.S.C. § 6972(b)(2)(A);
EMERGENCY PLANNING AND COMMUNITY RIGHT-TO-KNOW
ACT, 42 U.S.C. § 11046(a)(1)(A)(i); AND COMPREHENSIVE
ENVIRONMENTAL RESPONSE, COMPENSATION, AND LIABILITY
ACT, 42 U.S.C. § 9659(a)(1).**

Dear Mr. Dolsen:

      Pursuant to the 1976 Amendments to the Solid Waste Disposal Act (hereinafter
referred to as the "Resource Conservation and Recovery Act" or "RCRA"), 42 U.S.C. §
6972(b)(2)(A), the Emergency Planning and Community Right-to-Know Act, 42 U.S.C.
§ 11046(a)(1)(A)(i) ("EPCRA"), and the Comprehensive Environmental Response,
Compensation, and Liability Act, 42 U.S.C. § 9659(a)(1), the Community Association for
Restoration of the Environment ("CARE") and the Center for Food Safety ("CFS")
hereby notifies you that on or after the 90th day from the date of your receipt of this
notice, CARE and CFS intend to initiate a citizen suit in Washington Federal District
Court against Cow Palace, LLC, (hereinafter "Cow Palace Dairy"), located at 1631 N.
Liberty Road, Granger, WA 98938. Cow Palace, LLC operates two adjacent dairy
facilities, Cow Palace I and Cow Palace II (hereinafter jointly referred to as "Cow Palace
Dairy"). Both are considered part of a "Dairy Cluster," discussed *supra,* as designated by
a sampling report published by the Environmental Protection Agency ("EPA").

      The lawsuit will allege that Cow Palace Dairy has contributed and is contributing
to the past and present handling, storage, treatment, transportation, and/or disposal of
solid and hazardous waste in such a manner that may present an imminent and substantial
endangerment to health and the environment. The lawsuit will also allege that Cow

ATTACHMENT 1

Palace Dairy is operating an "open dump" in violation of the prohibitions of RCRA and that the Dairy has violated the mandatory reporting requirements of EPCRA and CERCLA by failing to inform the relevant emergency planning commissions of the release of reportable quantities of ammonia and other chemicals emanating from the Dairy. CARE and CFS will seek mandatory injunctive relief requiring Cow Palace Dairy to abate and/or remediate the source(s) of the endangerment to health and the environment, an order requiring Cow Palace Dairy to file the requisite reports under EPCRA and CERCLA, an order requiring Cow Palace Dairy to pay the maximum civil penalties allowable under the law, and an order from the Court requiring Cow Palace Dairy to pay the attorneys and expert witness fees and costs incurred in bringing this enforcement action.

## VIOLATIONS OF THE RESOURCE CONSERVATION AND RECOVERY ACT: IMMINENT AND SUBSTANTIAL ENDANGERMENT

Under 42 U.S.C. § 6972(a)(1)(B), citizens are authorized to bring suit against any person who is the "past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." In this case, Cow Palace Dairy is the generator, transporter, and owner and/or operator of a treatment, storage, and disposal facility that is contributing to the past and present storage, treatment, transportation and/or disposal of solid and hazardous wastes, namely liquid and solid manure. The Dairy's liquid and solid manure constitute "solid wastes" under RCRA because they are "any...discarded material, including solid, liquid, semisolid, or contained gaseous material resulting from industrial, commercial, mining, and agricultural operations..." 42 U.S.C. § 6903(27). Cow Palace Dairy's practices in storing, treating, transporting, applying, and disposing of liquid and solid manure may, and do, present an imminent and substantial endangerment to the health of nearby residents and to the environment.

In particular, Cow Palace Dairy and/or its agents have applied, continue to apply, and are reasonably likely to continue to apply liquid and solid manure wastes to nearby agricultural fields in amounts that exceed agronomic rates. Washington Department of Agriculture inspection reports from 2012 have documented elevated nitrate levels in soils receiving Cow Palace Dairy manure, a strong indication that the Dairy has applied manure in excess of agronomic rates. Applications beyond that which the current crop can effectively utilize causes nitrates to leach through soil and into groundwater. Once these nitrates enter the local water table, they migrate away from the Cow Palace Dairy and into the wells of nearby residents. The over-application of liquid manure has also resulted and will continue to result in the ponding of liquid manure, which creates a direct pathway for manure and manure constituents to runoff into surface water and discharge into groundwater.

Furthermore, Cow Palace Dairy's storage of solid and/or liquid manure in unlined earthen lagoons and permeable surfaces has caused and is continuing to cause the

discharge of untreated manure directly into groundwater. Upon information and belief, CARE and CFS estimate that Cow Palace Dairy's manure storage lagoons, which according to Washington Department of Agriculture reports have at least a 9.4 million gallon capacity, but potentially as much as a 40.8 million gallon capacity, are seeping at least 1.606 million gallons of untreated manure into the groundwater annually, but potentially as much as 8.6 million gallons or higher. Upon information and belief, these discharges have been ongoing since the date these lagoons were brought into operation and have been continuous for at least the past five years. These ongoing discharges were confirmed by EPA's sampling of downgradient wells between February and April, 2010. The seeping of untreated solid waste from the lagoons has contributed and is contributing to the excessive contamination of the groundwater, posing an imminent and substantial endangerment to health and the environment. Furthermore, Cow Palace Dairy's storage and/or composting of solid manure on permeable surfaces causes runoff and leachate from the solid manure to enter groundwater, contributing to the contamination of the local water table.

Upon information and belief, these practices and possibly others are responsible for groundwater contamination at levels beyond the Maximum Contaminant Level ("MCL") for specific chemicals. The MCLs are health-based standards that specify contaminants known to have an adverse effect on human health at levels beyond the parameters set forth by regulations. Here, samples taken by the Environmental Protection Agency as part of the "Relation Between Nitrate in Water Wells and Potential Sources in the Lower Yakima Valley, Washington," EPA-910-R-12-003 (September 27, 2012), indicate elevated levels of nitrate, potassium, magnesium, calcium, sodium, chloride, sulfate, barium, zinc, and industry-standard bovine pharmaceuticals in nearby residential wells downgradient from the "Dairy Cluster," which includes Cow Palace Dairy. Attached hereto is a map from the EPA study showing the specific location of the wells and other areas that were sampled at the Dairy Cluster sampling area, including areas on and near Cow Palace Dairy, as well as a summary of the results obtained for nitrate. Observed levels for nitrate in wells located downgradient of the Dairy Cluster, which includes Cow Palace Dairy (identified as WW-10 through WW-17) range from 22.7 mg/l to 46.7 mg/l.[1] These results exceed the MCL for nitrate, and in one instance by nearly 5 times higher than the 10 mg/l limit. *See* 40 C.F.R. Part 141 and Appendix I. The results were also significantly higher than the nitrate results obtained from WW-06, the sampled well located upgradient of Cow Palace Dairy, which had a reported value of 0.73 mg/l nitrate. These samples were taken between February and April, 2010. The practices responsible for this contamination have been ongoing since Cow Palace Dairy began its operations and have been continuous for at least the past five years.

---

[1] WW-10 yielded a result of ND, or "not detected" for this parameter. Wells WW-11 through WW-17 yielded results of 23 mg/l, 46.7 mg/l, 44 mg/l, 43.4 mg/l, 30.2 mg/l, 23.4 mg/l, and 22.7 mg/l, respectively. *See* T. 20 in "Relation Between Nitrate in Water Wells and Potential Sources in the Lower Yakima Valley, Washington," EPA-910-R-12-003 (September 27, 2012).

Members of CARE and CFS use and consume well water that is downgradient from Cow Palace Dairy. Upon information and belief, and based on the EPA study, these wells are contaminated predominantly because of Cow Palace Dairy's discharges into the groundwater. Human consumption of water containing more than 10 mg/l of nitrate causes a variety of severe health problems, including but not limited to methemoglobinemia ("blue baby syndrome," a fatal condition that affects infants), some forms of cancer and autoimmune system dysfunction. The excessive nitrates and other contaminants contained in these nearby wells are directly attributable to the Cow Palace Dairy's improper practices of storing, treating, transporting, and disposing (through application or otherwise) of liquid and solid manure wastes. As such, these practices may, and indeed do, present an imminent and substantial endangerment to health and the environment.

42 U.S.C. § 6972(a) states that the District Courts of the United States shall have jurisdiction to order any person who "has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste" that presents an imminent and substantial endangerment to health or the environment to take such action as may be necessary and to apply any appropriate civil penalties under 42 U.S.C. § 6928(g). CARE and CFS intend to seek legal and equitable relief in its lawsuit, including but not limited to an assessment of past, present, and future response, remediation, removal, and/or clean-up costs against Cow Palace Dairy, temporary and/or permanent injunctive relief, and the imposition of the maximum civil penalties authorized by law, as well as attorneys and expert witness fees and costs associated with the suit.

## VIOLATION OF RESOURCE CONSERVATION AND RECOVERY ACT: OPEN DUMPING

In addition to presenting an imminent and substantial endangerment to health and the environment, Cow Palace Dairy's improper manure management practices constitute "open dumping" in violation of RCRA. 42 U.S.C. § 6945(a) prohibits the operation of "any solid waste management practice or disposal of solid waste which constitutes the open dumping of solid waste." "Disposal" means "the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste . . . into or on any land or water[.]" 42 U.S.C. § 6903(3). Enforcement of this prohibition is available through RCRA's citizen suit provision. *Id.* As required by statute, EPA has promulgated criteria under RCRA § 6907(a)(3) defining solid waste management practices that constitute open dumping. *See* 42 U.S.C. § 6944(a); 40 C.F.R. Parts 257 and 258. These regulations prohibit the contamination of any underground drinking water source beyond the solid waste boundary of a disposal site. 40 C.F.R. § 257.3-4(a).

The definition of "underground drinking water source" includes an aquifer supplying drinking water for human consumption or any aquifer in which the groundwater contains less than 10,000 mg/l total dissolved solids. 40 C.F.R. § 257.3-4(c)(4). "Contaminate" means to introduce a substance that would cause: (i) the concentration of that substance in the groundwater to exceed the maximum contaminant

level specified in Appendix I, or (ii) an increase in the concentration of that substance in the groundwater where the existing concentration of that substance exceeds the MCLs specified in Appendix I. 40 C.F.R. § 257.3-4(c)(2).

Appendix I to 40 C.F.R. Part 257 lists the MCL for nitrate as 10 mg/l. Groundwater samples taken by the United States Environmental Protection Agency from wells downgradient from Cow Palace Dairy revealed levels of nitrate in excess of the 10 mg/l MCL.[2] The lawsuit will allege that Cow Palace Dairy's past and present waste disposal practices have caused nitrate contamination to travel beyond the facility boundaries, in violation of RCRA's open dumping prohibitions. Washington Department of Agriculture inspection reports from 2012 have documented elevated nitrate levels in soils receiving Cow Palace Dairy manure, a strong indication that the Dairy has applied manure in excess of agronomic rates. Applications beyond that which the current crop can effectively utilize causes nitrates to leach through soil and into groundwater, which in turn causes nitrate levels in the groundwater to exceed the MCLs. The lawsuit will further allege that Cow Palace Dairy's storage of liquid and solid manure in unlined earthen lagoons has caused manure to seep into the groundwater and leave the boundaries of the site, also causing nitrate contamination of groundwater in excess of the MCL. These practices have been ongoing since Cow Palace Dairy began its operations and have been continuous for at least the past five years, as confirmed by EPA testing on downgradient wells between February and April, 2010.

Pursuant to 42 U.S.C. § 6972(a), CARE and CFS intend to seek legal and equitable relief to remedy the Cow Palace Dairy's practice of open dumping. The relief sought includes, but is not limited to, an assessment of past, present, and future response, remediation, removal, and/or clean-up costs, a requirement that the extent of the contamination be fully investigated and remediated, other necessary temporary and/or permanent injunctive relief, the imposition of the maximum civil penalties (up to $37,500 per day per violation) authorized by law, and an award of the attorney and expert witness fees and costs incurred in bringing the enforcement action.

### VIOLATIONS OF THE EMERGENCY PLANNING AND COMMUNITY RIGHT-TO-KNOW ACT AND THE COMPREHENSIVE ENVIRONMENTAL RESPONSE, COMPENSATION, AND LIABILITY ACT

The lawsuit will also allege that Cow Palace Dairy has violated and continues to violate CERCLA, 42 U.S.C. § 9603(a), and EPCRA, 42 U.S.C. § 11004, as well as the federal regulations implementing those statutes, by failing to adequately report to the relevant emergency response commissions the release of reportable quantities of certain hazardous chemicals, including but not limited to ammonia, which emanate from the Dairy on a daily basis. Upon information and belief, CARE and CFS contend that Cow Palace Dairy is releasing, among other substances, more than 100 lbs/day of ammonia into the air without adequately reporting those releases in accordance with the statutory

---

[2] In particular, EPA reported nitrate levels of 23, 46.7, 44, 43.4, 30.2, 23.4, and 22.7 mg/l in seven of the eight downgradient wells, all above the MCL.

requirements of EPCRA and CERCLA. Ammonia is a designated extremely hazardous substance under EPCRA with a threshold reporting quantity of 100 pounds per day. 40 C.F.R. Part 355, App. A. Ammonia is also designated an extremely hazardous substance under EPCRA with a threshold reporting quantity of 100 pounds per day. 40 C.F.R. Part 355, App. A. These releases have been ongoing since Cow Palace Dairy began its operations and have been continuous for at least the past five years. Accordingly, Cow Palace Dairy should have been reporting these releases to the requisite emergency response commissions.

The owners and operators of Cow Palace Dairy knew or should have known that the facility was releasing over the reporting threshold of ammonia because Cow Palace is a member of the Washington Dairy Federation and the National Milk Producers Federation, two dairy trade groups that have been active in issues concerning air emissions from dairies and EPCRA compliance. In fact, the National Milk Producers Federation has an entire section of its website devoted to CERCLA & EPCRA reporting requirements, including a link to an industry-accepted ammonia emissions estimator.[3] Based on that estimator, and assuming that Cow Palace Dairy maintains more than 6,840 mature dairy cattle and 2,000 to 2,999 heifers and/or calves[4], the Cow Palace Dairy is releasing more than the reportable quantity of ammonia on a daily basis. These releases have been ongoing since Cow Palace Dairy began its operations, and for at least the past five years.

Members of CARE and CFS live in proximity to Cow Palace Dairy. They have tried to ascertain their potential exposure to hazardous chemicals from Cow Palace Dairy, but have been unable to because of the Dairy's failure to report its releases. This lack of knowledge affects the individual parties' abilities to protect themselves, their friends and family, and their community from potential exposure to hazardous levels of ammonia.

CERCLA authorizes citizen enforcement actions in federal court "against any person…who is alleged to be in violation of any standard, regulation, condition, requirement, or order which has become effective pursuant to this chapter…" 42 U.S.C. § 9659(a). EPCRA likewise authorizes citizen suits for failure to comply with reporting requirements for releases of reportable quantities of hazardous substances. 42 U.S.C. ¶ 11046(a)(1)(A). Cow Palace Dairy has been and remains in violation of these reporting provisions. Accordingly, CARE and CFS will seek civil penalties against Cow Palace Dairy of up to $37,500 per day for each violation, declaratory relief, injunctive relief from the court to remedy these violations, and an award of its attorney and expert witness fees and costs.

---

[3] *See* http://nmpf.org/washington_watch/environment/cercla-epcra (last visited October 15, 2012). The estimator is the Koelsch & Stowell Ammonia Emissions Estimator.
[4] EPA Study at 49. EPA estimated a range for the herd because Cow Palace Dairy would not provide more specific information about the Dairy's herd size.

## PARTIES GIVING NOTICE

The names, addresses, and phone numbers of the people giving this Notice of Intent to Sue are:

Community Association for Restoration of the Environment, Inc.
2241 Hudson Road
Outlook, WA 98938
Tel: (509) 854-1662

Center for Food Safety
303 Sacramento Street, 2nd Floor
San Francisco, CA 94111
Tel: (415) 826-2770
Fax: (415) 826-0507

The names, addresses, and phone numbers of Counsel for the parties giving this Notice of Intent to Sue are:

Charles M. Tebbutt
Daniel C. Snyder
Law Offices of Charles M. Tebbutt, P.C.
941 Lawrence St.
Eugene, OR 97401
Tel: (541) 344-3505
Fax: (541) 344-3516
charlie.tebbuttlaw@gmail.com
dan.tebbuttlaw@gmail.com

Jessica Culpepper
Public Justice
1825 K Street, NW Suite 200
Washington, DC 20006
Tel: (202) 797-8600
Fax: (202) 232-7203
jculpper@publicjustice.net

**Attorneys for Plaintiffs.**

Brad J. Moore
Stritmatter Kessler Whelan Coluccio
200 Second Ave W.
Seattle, WA 98119
Tel: (206) 448-1777
Fax: (206) 728-2131

**Local Counsel.**

## CONCLUSION

We will be available to discuss effective remedies and actions that will assure Cow Palace Dairy's future compliance with the Resource Conservation and Recovery Act, the Comprehensive Environmental Response, Compensation, and Liability Act, and the Emergency Planning and Community Right-to-Know Act, and all other applicable state and federal environmental laws. If you wish to avail yourself to this opportunity, or if you have any questions regarding this letter, please contact the undersigned.

Sincerely,

Charles M. Tebbutt
Daniel C. Snyder
Law Offices of Charles M. Tebbutt, P.C.

*Via Certified Mail to the following:*

Barack Obama, President
The White House
1600 Pennsylvania Ave.
Washington, D.C. 20500

Christine Gregoire, Governor
Washington State Office of the Governor
416 Sid Snyder Ave. SW, Ste. 200
P.O. Box 40002
Olympia, WA 98504

Eric Holder, Attorney General
United States Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC 20530

Rob McKenna, Attorney General
Washington State Office of the Attorney General
1125 Washington St. SE
P.O. Box 40100
Olympia, WA 98504

Lisa Jackson, Administrator
U.S. Environmental Protection Agency
Ariel Rios Bldg.
1200 Pennsylvania Ave., NW
Washington, D.C. 20460

Dennis McLerran, Regional Administrator
U.S. Environmental Protection Agency, Region X
1200 6th Ave. Ste. 900
Seattle, WA 98101

Ted Sturdevant, Director
Washington State Dept. of Ecology
P.O. Box 47600
Olympia, WA 98504