DEBORA K. KRISTENSEN (WSB #20520)
JEFFREY C. FEREDAY, admitted *pro hac*
PRESTON N. CARTER, admitted *pro hac*
GIVENS PURSLEY LLP
601 West Bannock Street
P.O. Box 2720
Boise, Idaho 83701-2720
Telephone:  (208) 388-1200
Facsimile:  (208) 388-1300
Email:    dkk@givenspursley.com
          jefffereday@givenspursley.com
          prestoncarter@givenspursley.com

*Additional Counsel for Defendant, Cow Palace, LLC, on Signature Page*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| COMMUNITY ASSOCIATION FOR RESTORATION OF THE ENVIRONMENT, INC., a Washington Non-Profit Corporation<br>*and*<br>CENTER FOR FOOD SAFETY, INC., a Washington, D.C. Non-Profit Corporation,<br>                Plaintiffs,<br>v.<br>COW PALACE, LLC, a Washington Limited Liability Company, THE DOLSEN COMPANIES, a Washington Corporation, and THREE D PROPERTIES, LLC, a Washington Limited Liability Company,<br>                Defendants. | CASE NO. CV-13-3016-TOR<br><br>**COW PALACE, LLC'S MOTION TO STRIKE UNDISCLOSED EXPERT TESTIMONY**<br><br>Noted: January 6, 2015<br>1:00 pm<br>Spokane, Washington |

## I.     INTRODUCTION

The Federal Rules of Civil Procedure require that experts disclose a "complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2). The Court ordered that the parties make these disclosures no later than September 22, 2014 (for initial reports) and October 20, 2014 (for rebuttal reports). ECF No. 140 at ¶5. Both parties submitted reports on those dates, and both parties deposed experts during the last week of October and the first week of November. Notwithstanding Rule 26 and the Court's Order, Plaintiffs submitted new expert testimony in support of their Motion for Summary Judgment. These untimely opinions should be stricken. Fed. R. Civ. P. 37(c)(2) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion . . . .")

## II.    ARGUMENT

### A.    Legal Standard

Federal Rule of Civil Procedure 26(a)(2) governs the disclosure of expert testimony. Under Rule 26, written expert reports must contain, *inter alia*, "a *complete* statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i) (emphasis added). And, "[a] party must make these disclosures at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D).

Rule 37(c)(1) sets forth, in no uncertain terms, the consequences that flow from failing to timely disclose expert opinions: "If a party fails to provide

information or identify a witness as required by Rule 26(a) or (e), *the party is not allowed to use that information* or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1) (emphasis added). These "self-executing" and "automatic" exclusion sanctions serve an important purpose. *Theoharis v. Rongen*, 2014 WL 3563386, *8 (W.D. Wash. 2014) (citing Federal Rules advisory committee). "Rule 37(c)(1) is 'intended to put teeth into the mandatory . . . disclosure requirements' of Rule 26(a) and (e)." *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 861 (9th Cir. 2014) (citing 8B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2289.1 (3d ed.2014)). The party that presents untimely testimony bears the burden of demonstrating why the tardy testimony should not be stricken. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001) ("Implicit in Rule 37(c)(1) is that the burden is on the party facing sanctions to prove harmlessness.").

     Courts routinely strike or exclude expert testimony submitted in violation of these discovery rules. *E.g.*, *Wong v. Regents of Univ. of Cal.*, 410 F.3d 1052, 1058-62 (9th Cir. 2005); *Avila v. Willits Envtl. Remediation Trust*, 633 F.3d 828, at 83-36 (9th Cir. 2011); *Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1008-09 (8th Cir. 1998) (striking new opinions in affidavit filed in support of motion for summary judgment); *Theoharis v. Rongen*, 2014 WL 3563386, at *8 (W.D. Wash. July 18, 2014); *Luke v. Emergency Rooms, P.S.*, 2008 WL 410672, at *3 (W.D. Wash. Feb. 12, 2008) (unpublished). In addition to these "automatic" exclusion

sanctions, courts have awarded attorney fees incurred in moving to strike newly disclosed expert opinions. *Theoharis*, 2014 WL 3563386 at *8.

**B.    Factual Background**

Pursuant to the Court's Scheduling Order, the parties were required to submit all expert reports no later than September 22, 2014 and all rebuttal reports no later than October 20, 2014. ECF No. 149. On September 22, Plaintiffs submitted reports from three experts: Byron Shaw, David Erickson, and Robert Lawrence. Declaration of Preston N. Carter in Support of Motion to Strike ("Carter Dec.") at Exhibits 1, 2, and 3, respectively. On October 20, Plaintiffs submitted several rebuttal reports from Shaw and Erickson. Carter Dec. at Exhibits 4, 5, 6, 7, 8 and 9. Based on these reports, Cow Palace deposed Lawrence, Shaw and Erickson on October 23, November 3 and November 4, respectively. Carter Dec. at ¶¶9-10. Discovery closed on November 7. ECF No. 149 at ¶6.

On November 17 and 18,[1] Plaintiffs filed new declarations from Shaw, Erickson and Lawrence. ECF Nos. 225, 212, and 213. Each of these declarations contains opinions and facts that were not disclosed in the experts' initial reports or

---

[1] Dispositive motions were due on November 17. ECF No. 149 at ¶7. The Declarations of Shaw and Lawrence where were filed on November 18 and are therefore untimely. This provides an additional basis to strike them.

MOTION TO STRIKE UNDISCLOSED EXPERT TESTIMONY - 3

rebuttal reports.[2]  In addition, Lawrence's Declaration expresses opinions that he expressly disclaimed during his deposition.  *See* Carter Dec., Ex. 13.

### C. Plaintiffs' attempt to present new expert testimony to support their Motion for Summary Judgment should be rejected.

Plaintiffs have offered new, previously undisclosed —and sometimes inconsistent —expert testimony in support of their Motion for Summary Judgment. These new opinions should be stricken.

#### 1. Byron Shaw.

Shaw filed an Initial Expert Report ("Shaw Report") on September 22 which spanned more than 230 pages and covered a variety of topics, including the nitrogen cycle, a review of Cow Palace's agricultural fields, and a review of the sampling results from the wells installed by the U.S. Environmental Protection Agency ("EPA") and Cow Palace as part of implementing the March 2013 Administrative Order on Consent ("AOC").  Carter Dec., Exh. 1.  Thereafter, Shaw submitted a 95-page declaration in support of Plaintiffs' Motion for Summary Judgment.  ECF No. 225 ("Shaw Declaration").  While the Shaw Declaration contains some opinions that are cut-and-pasted from the Shaw Report, it also contains entirely new opinions.  These new opinions are not delineated in any way. Indeed, many are intermingled with opinions that have been previously expressed. *See* Carter Dec., Exh. 10.

---

[2] Cow Palace has painstakingly identified these previously undisclosed opinions and facts by highlighting them on Exhibits 10, 11, and 12 to the Carter Dec.

MOTION TO STRIKE UNDISCLOSED EXPERT TESTIMONY - 4

The most notable of Shaw's new opinions is the fact that he shifts his opinion from one that Cow Palace applied manure in quantities greater than "agronomic rates," to one that Cow Palace applied its manure "without regard to crop fertilization rates." *Compare, e.g.*, Shaw Report (Exh. 1) at p. 20 *to, e.g.*, Shaw Declaration (Exh. 10) at ¶19.  This change is material.  Whether an application is "agronomic," or whether it is made at "agronomic rates," is a <u>scientific concept</u> that is open to dispute.  Whether a party applies manure with regard to crop fertilization rates is an opinion of <u>fact</u>, not of science.  Had Shaw expressed this opinion earlier, Cow Palace's deposition of Shaw likely would have proceeded much differently, focusing on the extensive factual record showing that Cow Palace did, indeed, calculate its manure applications with reference to crop fertilization rates.[3]  Cow Palace also would have had the opportunity to further develop the factual and expert record on this issue.

---

[3] This evidence includes, for example, spreadsheets showing that Cow Palace included each crop's fertilization needs matched up to that season's application rates. ECF No. 190-10 at p. 156 (Exh. 10.1 to Defendant's Appendix to Statement of Facts).  It would also include Mr. Boivin's testimony that Cow Palace calculated manure application rates by matching the nitrogen content in its manure, as estimated in the NMP, with the expected crop fertilization needs, as stated in the NMP. ECF No. 190-3 at ¶41 (when calculating the amount of manure to apply, Cow Palace considered, among other things, how much nitrogen the crop was estimated to need in the upcoming season).

MOTION TO STRIKE UNDISCLOSED EXPERT TESTIMONY - 5

In addition, Shaw presents an opinion that nitrate found in groundwater wells are caused by recent agricultural activities, despite the evidence presented by Defendants that past, more inefficient agricultural activities or historical nitrate sources may be the cause of the nitrate. Shaw Decl. at ¶¶100-105. To support this new opinion Shaw cites a variety of documents that he did not discuss in the prior reports. *Id.* at ¶101. In particular, Shaw produces a document entitled, "Yakima groundwater temperatures, in Centigrade." *Id.* at ¶. 103. That document is not Bates Numbered, and it is not referenced in any of Shaw's previous reports. Shaw's new opinions regarding groundwater recharge are material: one of the disputed issues in this lawsuit is the speed at which nitrates travel through the thick vadose zone under Cow Palace to reach the aquifer, if they do at all. Shaw presents a new opinion on this key topic, after discovery has closed and after Shaw was deposed.

Shaw also presents new opinions regarding Cow Palace's crop yields, Shaw Declaration at ¶¶24.a – 25; applications before the year's crop was planted, *id.* at ¶¶28-30; phosphorus and potassium levels, *id.* at ¶¶32-33; possible impacts to surface waters, *id.* at ¶53; and others that are highlighted in Exhibit 10 to the Carter Dec. but that are not discussed separately here. Cow Palace did not have the opportunity to develop a record on, and depose Shaw on, these issues. Each of these new opinions is materials and should be stricken.

### 2. Dennis Erickson.

Erickson submitted an Initial Report, numerous Rebuttal Reports, and a Declaration in Support of Plaintiffs' Motion for Summary Judgment (ECF No.

212). Erickson's Declaration contains opinions and facts that were not disclosed in the previous expert reports. *See* Carter Dec., Exh. 11. For example, in his initial report, Erickson presented what purport to be "calculations" of seepage through Cow Palace's lagoons, using an equation known as Darcy's Law and assumptions about various parameters. Exh. 2 at ¶¶49-106. In his Declaration, Erickson presents some of these same calculations, *e.g.*, Exh. 11 at ¶39-43, but the results are different. *Compare* Exh. 2 at ¶70 (Lagoon 3 purportedly leaks 9,542 gallons per day) *with* Exh. 11 at ¶43 (Lagoon 3 purportedly leaks 763 gallons per day). Indeed, the calculations presented by Erickson in his Declaration sometimes differ by *an order of magnitude or more* from those presented in his Initial Report. *Id.*; *compare* Exh. 2 at ¶65 (Lagoon 2 purportedly leaks 9,542 gallons per day) *with* Exh. 11 at ¶39 (Lagoon 2 purportedly leaks 1,018 gallons per day). The materiality of these new opinions cannot be disputed: the degree of lagoon seepage is a central dispute in this case. Erickson's newly disclosed calculations are entirely inappropriate, and should cast doubt upon the propriety—not to mention the accuracy—of his opinions.

       Erickson also includes a new statement that, at first, seems innocuous, but is in fact quite material. In paragraph 29 of his Declaration, Erickson states that seepage from a lagoon will migrate in the subsurface "either through saturated flow or unsaturated flow conditions." Exh. 11 at ¶29. Though his Initial Report contained a paragraph with nearly the same language that paragraph did not contain the statement about "unsaturated flow conditions." *E.g.*, Exh. 2 at ¶67. This new opinion is important because Darcy's Law does not apply to unsaturated

MOTION TO STRIKE UNDISCLOSED EXPERT TESTIMONY - 7

flow conditions. ECF No. 190-11 at p. 5 (Exh. 13 to Appendix to Statement of Facts). Erickson thus materially changed his previously disclosed opinion by inserting the reference to unsaturated flow. Erickson also presents other new opinions and additional facts that are identified, but not discussed at length. *See* Carter Dec., Exh. 11. Each of these previously undisclosed opinions should be stricken.

### 3. Robert Lawrence.

Lawrence, Plaintiffs' third primary expert, falls into this same pattern. In his Declaration, Lawrence presents what he contends is evidence "connect[ing] Cow Palace with the nitrate contamination of groundwater." Exh. 12 at ¶10. He also contends that sampling of nine wells by EPA "indicate [that] . . . Cow Palace [] is a source of the increased nitrogen levels in downgradient wells." *Id.* at ¶12. Yet, Lawrence never formed any such opinion in his Initial Report. *See* Lawrence Initial Report. Indeed, in his deposition, Lawrence specifically disavowed any opinion as to whether Cow Palace was the cause of any identified nitrate concentrations. Exh. 13, 14:25-15:5 ("Q: So you are not offering an opinion to a reasonable degree of scientific certainty as to whether or not the nitrates as they appear in the EPA tests or any other testing were caused or – caused by Cow Palace Dairy? A: Correct."). Lawrence also opines that "the mere presence of R.O. systems do not assuage [his] concerns for human health in these properties." Lawrence Dec. at ¶ 15. This opinion was not presented in Lawrence's Initial Report. Each of these new opinions are material: whether Cow Palace is a cause of nitrogen levels in groundwater is hotly disputed, as is the propriety of R.O.

MOTION TO STRIKE UNDISCLOSED EXPERT TESTIMONY - 8

systems—such as those that Cow Palace has installed and maintained under the Consent Order—to treat nitrates. The Lawrence Declaration thus improperly attempts to present new expert testimony well after the deadline had passed.

**D.    Cow Palace is entitled to recover the fees incurred in discovering, identifying, and moving to strike the new opinions.**

Upon reviewing Plaintiffs' expert declarations counsel for Cow Palace realized that numerous, material new opinions were being expressed. Counsel was, therefore, required to compare the declarations (which are 95, 63, and 17 pages long, excluding exhibits) to the experts' initial (233, 124, and 141 pages long) and rebuttal reports (totaling 69 pages) to identify the new opinions. This tedious exercise was necessary in light of the importance of expert testimony to this case, the importance of the newly expressed opinions, because the experts had already been deposed, and because the discovery deadline had long since passed. Courts in similar circumstances have awarded attorney fees associated with identifying and challenging untimely disclosed expert testimony. *See Theoharis*, 2014 WL 3563386 at *8 (awarding fees to party for the time spent "solely on the portion of the reports" that were untimely disclosed). Cow Palace respectfully requests that the Court order Plaintiffs to pay the fees incurred by Cow Palace. If fees are ordered by the Court, Cow Palace will serve an invoice on Plaintiffs within 30 days of the Order.

### III.    CONCLUSION

For each of the foregoing reasons, Cow Palace respectfully requests that the Court enter an order striking the new opinions and factual bases from the record,

MOTION TO STRIKE UNDISCLOSED EXPERT TESTIMONY - 9

and an order requiring Plaintiffs to pay the attorney fees incurred in discovering the new opinions and bringing this Motion.

DATED this 1st day of December 2014.

| /s/ Debora K. Kristensen | /s/ Brendan V. Monahan |
|---|---|
| DEBORA K. KRISTENSEN (WSB #20520) | BRENDAN V. MONAHAN (WSB # 22315) |
| GIVENS PURSLEY LLP | OLIVIA GONZALEZ (WSB # 41582) |
| 601 West Bannock Street | MATHEW L. HARRINGTON (WSB # 33276) |
| P.O. Box 2720 | |
| Boise, Idaho 83701-2720 | SEAN A. RUSSEL (WSB # 34915) |
| Telephone: (208) 388-1200 | STOKES LAWRENCE VELIKANJE MOORE & SHORE |
| Facsimile: (208) 388-1300 | 120 North Naches Avenue |
| dkk@givenspursley.com | Yakima, Washington 98901-2757 |
| | Telephone: (509) 853-3000 |
| *Counsel for Defendant, Cow Palace, LLC* | Facsimile: (509) 895-0060 |
| | brendan.monahan@stokeslaw.com |
| | olivia.gonzalez@stokeslaw.com |
| | mlh@stokeslaw.com |
| | sar@stokeslaw.com |
| | |
| | *Counsel for Defendant, Cow Palace, LLC* |

MOTION TO STRIKE UNDISCLOSED EXPERT TESTIMONY - 10

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1st day of December 2014, I caused the following parties or counsel to be served by electronic means, as more fully reflected in the Notice of Electronic Filing:

Brad J. Moore
brad@stritmatter.com

Elisabeth A. Holmes
eholmes@centerforfoodsafety.org

George Kimbrell
gkimbrell@centerforfoodsafety.org

Daniel C. Snyder
Dan.tebbuttlaw@gmail.com

Charles M. Tebbutt
charlie.tebbuttlaw@gmail.com

Jessica L. Culpepper
jculpepper@publicjustice.net

Beth E. Terrell
bterrell@tmdwlaw.com

Toby J. Marshall
tmarshall@tmdwlaw.com

Ralph H. Palumbo
ralphp@summitlaw.com

AND I FURTHER CERTIFY that on such date, I served the foregoing on the following in the manner indicated:

None.

/s/ Debora K. Kristensen
Debora K. Kristensen